Our next argument is 21-2357, Medtronic v. Teleflex. Ms. Ahmadi, please proceed. May it please the Court, Brittany Ahmadi on behalf of Medtronic. The Board found that most features of the challenge claims were unpatentable over Contos and other art. Even though Contos describes a system that's nearly identical to the one described in the patents, the Board found some challenge claims patentable based on minor differences from Contos, all of which it found were also disclosed in the prior art. I'll first address the side-opening claims and one French smaller claim, then the double-inclined claims, and finally the Board's evaluation of secondary considerations. Could I ask you at the outset about this issue of waiver because of the limited rehearing that was sought before the Director? I mean, there are examples here of motivations to combine that were argued before the Board that the Board simply didn't address. You argue that that's a mistake, that they had to address the motivations that you created, and it's reversible error that they didn't. And the response to that, as I read the Teleflex pleadings, is that no, you've waived that argument because that was not part of the rehearing that was sought before the Director. And there seems to be a non-presidential decision by our court, PolyCon, which might support that. That's an important issue as to whether you have to seek rehearing before the Director on all issues or whether you can, for exhaustion or whether you can limit yourself to particular issues, which seems to be central to some of the things that are going on here. Could you address that, please? Yes, Your Honor. Teleflex points to a regulation which states that all matters that the party believes the Board misapprehended or overlooked should be raised in a petition for rehearing. That regulation relates to the issues to be raised for rehearing before the Board, but doesn't affect this court's jurisdiction to hear issues on appeal. And so, as we pointed out in our reply brief... I don't think that Judge Dyke was suggesting the jurisdictional bar. I think that what Judge Dyke was suggesting is there's a question of potential forfeiture. And so, since you didn't raise it in the rehearing below, shouldn't we take that into account? So, with respect... It's a question of exhaustion of remedies. Is there an obligation to raise all issues before the Board on rehearing in order to exhaust your remedies for judicial review? That's the issue. And we have cases saying, no, you don't have to file a petition for rehearing. No, the failure to file a petition for rehearing isn't required for exhaustion. But we've never, aside from this non-presidential decision, addressed the question of whether you have to present all issues to the Director on rehearing. So, as we explained in our reply brief, Your Honor, under the Supreme Court's decision in Darby v. Cisneros, this Court is not free to impose an exhaustion requirement where there is one absent from statute or regulation. And with respect to the regulation at issue here, there's no statement that issues that are not raised in a petition for rehearing are subject to waiver. And notably, the Board knows, or the Patent Office knows, how to impose that requirement when it sees fit, because there's separate regulations that explicitly state that issues not raised are subject to a waiver. The Darby v. Cisneros case was not considered in the Polycom decision. It was not raised by the parties. And we think that that decision precludes this Court from imposing an exhaustion remedy where there's none explicitly stated by statute or regulation. But you don't think the regulation requires you to bring all of your issues before the Board if you're filing a rehearing petition? The regulation requires you to bring all of the issues on which you seek rehearing before the Board. But it does not state that that failure to bring an issue results in a waiver of an issue on appeal, particularly whereas here, all of the issues were raised before the Board and were passed on before the Board, and thus were fully briefed by the Board before the Board and before this Court on appeal. I'm not positive about what we should do about this exhaustion principle, but it seems to me that if it had any application, it would be here, because the issue you're seeking to bring to our attention is not a question of law, for example, but rather a question of fact that you say the Board simply failed to decide. If there were any concept that I think you really ought to bring in your rehearing petition if you're going to file one, it's that. Because your argument to me isn't the Board got it wrong. Your argument to me is the Board didn't render a decision on it. That would have been a really easy thing for them to rectify had you mentioned it in your rehearing petition, wouldn't it? Well, I think there's another distinction here from the Polycom case in the fact that this was a situation where we filed a petition for director review shortly after the Arthrex decision came down. So it was a petition for director review, whereas in Polycom, it was a petition before the Board for panel rehearing. And so in this situation where director review was sort of at its infancy and parties were raising issues that were of broader implication for the director to review, it wasn't a situation where there was issues that were addressed specific to this case that would be raised before the same panel hearing the issue. So we think that's another factual distinction from Polycom. But even setting aside the waiver issue, the issues were fully briefed before the Board. They're fully briefed before this court, and we think this court has the discretion to hear the issues on appeal notwithstanding any waiver. We don't think there's waiver here, given the Darby case and the distinction from Polycom. If we agree with you it's not waived and that the Board failed to address that motivation, there's actually at least one place in the Board opinion. I don't have it handy, but as a former Dyke clerk, I have no doubt you know the record very well. So where in the record will I find? I remember somewhere where the Board said, well, this is a really close question on motivation, but then they went ahead and went the route of secondary or objective considerations instead and said even if we agree with Medtronic on the motivation, the secondary considerations outweigh the prima facie case. So can you remind me where? I don't remember where that is. Yes, Your Honor, it's at APPX 46 for the 032 patent decision. And I think with respect to that, the Board... What would you have embarrassed your judge if you couldn't have answered that question? With respect to... She did. She answered it. I know, so what would she have embarrassed you if she couldn't have? Your Honor, with respect to that statement by the Board that this is a close case and then skipping to the secondary considerations, we submit that as an error in and of itself. This Court has held repeatedly that the Board is required to consider all four grand factors, including motivation to combine, when it is contested as it was here. Yes, but if the conclusion is that the secondary consideration evidence in this case is enormous, which is what they concluded it was, then that could outweigh... They basically say, even if you're right on motivation to combine, even if we give you that, you still lose because the secondary consideration factors outweigh the prima facie case, even if you're right about the motivation to combine. What's wrong with that? That seems like a perfectly reasonable thing for a Board to do. So just as the Board is not free to say, all of the first three grand factors are such a strong case of obviousness, I'm going to skip the secondary considerations. It's equally not free to say the secondary considerations are so strong that I'm going to skip the first prima facie case. Well, they didn't say that anyway, right? They didn't say, even if we're wrong about the prima facie case, it's outweighed by the secondary consideration. That's correct, Your Honor. It simply said, this is a close case. I'm going to just jump right to secondary considerations. And I think this Court has held in cases like ZUP v. Nash that a strong showing of obviousness may stand even in the face of considerable evidence of secondary consideration. You didn't challenge any of the secondary consideration evidence on appeal, did you? We do challenge the finding of nexus as well as the finding of copying on appeal. Okay, but all of the other, the long-felt need, the industry praise, the licensing, all that, you didn't challenge any of that, correct? Apart from the nexus determination, we've not challenged those specific. Why don't you move to the nexus determination then, since that's the only thing that you've challenged? Certainly, Your Honor. So with respect to the finding of nexus, the Board violated this Court's directive that if features, and this is in the ORMCO case, if features that create the commercial success was known in the prior art, the success is not pertinent. Teleflex attributed the guideline or success and other secondary considerations to three features, the rapid exchange functionality, the increased backup support, and the size. Actually, they argued it was to the combination of all of the elements, so I was just really troubled by your argument that the Board erred by virtue of because every one of these features is found in the prior art. They argued it was the combination. The Board found it was the combination. What's wrong with that? They didn't argue the combination of all the features. They argued the combination of these three features, which is, and this is that Appendix 17610 to 17611 of the patent owner's response. They argued that it was the rapid exchange functionality, increased backup support, and a side opening in a coaxial lumen which facilitates insertion of cardiology devices. All of those features, each and every one, is taught by Rethemann. And so in this particular situation, if everything that is driving the commercial success is taught in a single prior art reference, there is no nexus under this court's case law. Now, Teleglex argues that the success was attributable to- It didn't have a coaxial. It had a dual lumen catheter. The picture is obvious. You didn't ask the Board to find that. You never argued to the Board that that reference described coaxial. And the Board, the picture itself is the dual lumen. Just look at it. It's not complicated. So you never made that argument to the Board, this argument that you're making now, that this reference discloses everything in the claims. You never made that argument. Your Honor, we did make the argument that it's disclosing everything in the claims. Teleflex, I think notably, they pointed to on appeal the coaxial lumen limitation in the 032 and 380 patents. We explained in our papers that Rethemann includes a coaxial lumen, and that's at APPX 23031. And with respect to that coaxial lumen, Teleflex's papers before the Board attributed the coaxial lumen in conduction with the side opening and the ability to insert cardiology devices with the commercial success. And Rethemann teaches exactly that. And to the extent that Teleflex is now pointing on appeal to the single lumen limitation, that limitation, there's nothing that indicates that that is inventive in any way. In fact, the Board found that limitation... That's right. It's not inventive, and they don't argue that. But it's the combination. That's their argument. I'm looking at 17.610 and 17.611 of the appendix. This is Teleflex's brief below, where they're arguing that it's the combination, and they expressly mention the coaxial lumen as one of the elements on 17.611. So... In 17.611, Teleflex states that they have a coaxial lumen through which interventional cardiology devices are insertable, combined with the side opening. Rethemann has a coaxial lumen, which is essentially just a tube, and it has a side opening that facilitates the insertion of cardiology devices. And so with respect to that aspect of the claims, which was one of the three elements that Teleflex attributed the secondary considerations, Rethemann teaches that aspect of the claim. And I see that I am into my rebuttal time. Reserve the remainder. Thank you. Thank you. Mr. Is it Loud? Loud. Loud. Mr. Loud, please proceed. Thank you. May it please the Court. Good morning, Your Honors. I'd like to start with the issue of Nexus to pick up where the discussion just left off. Chief Judge Moore, you pointed out that Medtronic didn't argue below that the Rethemann device teaches a coaxial limitation. That's correct. The single page from the petition that's pointed to in Medtronic's reply brief was talking about the device as a whole being coaxial within a guide catheter. It wasn't about the evacuation lumen, which is the part of the device through which a stent would pass. And as you pointed out, Chief Judge Moore, there's a picture of this at page 17 of our brief. It is not coaxial. It's fixedly offset by the inflation lumen, which not only offsets that evacuation lumen, but restricts the size of it as well. To make a further point on that, there is no argument anywhere below or on appeal that Rethemann teaches the single lumen limitation. That was also part of what our expert testified was the basis of the nexus to the secondary considerations so as to the 776 patent. There appears to be no contest at all on that point. Could I bring you back to the Prima Fascia case? Sure. For example, with respect to the side opening, there are two arguments in favor of motivations to combine. It makes it easier to extend and retract the child catheter, two separate motivations. The board did not address those. Your only argument seems to be that there was a forfeiture because of a failure to exhaust before the director. So we have this question here as to whether the board's regulation requires exhaustion as a condition of judicial review, and even whether they could impose such a requirement as a condition for judicial review. I have a hard time reading our cases as suggesting that there can be a forfeiture because of a limited petition for review to the director. And it would seem to make no sense. It would mean that the director would be burdened with considering every single issue that was decided by the board, and the whole purpose of director review is to be selective. Could you address that? Happy to do that, Your Honor. I just want to make one point, which is we do contest that the board didn't consider those. That's an alternative basis for affirmance there, but I'll speak to the waiver issue first. First, I think it's very important to draw a distinction between exhaustion and waiver. We are not arguing that the decision below is non-final because Medtronic failed to exhaust its remedies below. It is a final decision. It is properly appealed to this court. We don't dispute that. That's the whole purpose of exhaustion. That's what Darby v. Cisneros is about. It's about statutory interpretation of the Administrative Procedure Act. It is something of final agency action. No contest that it is here. However, within a final agency action... How can there be a waiver if they're not required to raise the issue for exhaustion purposes? They don't have to exhaust. Exhaustion doesn't run issue by issue. It just runs to the decision of the board. So the board made a final decision that we agree is reviewable. So how could there be a waiver? If they don't have to, if there's no exhaustion requirements, they raise every issue before the director, how could the failure to raise every issue before the director result in a preclusion of judicial review? Well, just as the Polycom case said, essentially this court shouldn't be burdened with reviewing issues that could have been raised in a petition for rehearing that was optional but Medtronic chose to file. I also want to make a point, which is that there's a limiting principle here. We're not arguing that Medtronic had to raise every legal error or challenge to the evidence before the board or substantial evidence on a factual question. Medtronic only had to raise the issues that it believed the board overlooked or misapprehended. That's what the regulation says. And the regulation was drafted before director review existed. The PTO can amend that if it chooses to, to lessen the burden on the director in the length of the petitions. But Medtronic chose to file that rehearing petition. It's the same regulation that applies if they had filed for board rehearing before that. Can you switch now to your argument, which you started with, which is that the board implicitly did decide this when they said it was a close case after they actually went through and articulated exactly these motivations and all of the arguments Medtronic made and then they said it's a close case. That is, in your view, an implicit decision? That's my understanding of your argument. Is that correct? That's right, Your Honor. The finding that the evidence on motivation to combine presented a close case is a finding about the weight of the evidence. And the board's... So, I mean, is your argument that the board considered and even accepted Medtronic's argument when it determined that, but went on to find that the objective considerations, even if Medtronic's argument were accepted, would outweigh? That's right, Your Honor. That would be my reading of the board's opinion. If the court has no further questions, I'll cede the balance. No, I do have further questions. With respect to both the side opening claims and the one French claims, you have a situation here where these features are in the prior art, in the same type of device, and generally accomplish the same purposes. And yet the board seems not to have given weight to that and to have said things which are seemingly not really supported by the record. I mean, for example, with respect to the one French claims, it says it would require too many modifications, but it never says that those modifications would be beyond the skill of someone in the art. So don't they have to make that finding? No, Your Honor. The board didn't find that it would be beyond the level of skill of a person of ordinary skill in the art. That's a little bit of a mischaracterization in Medtronic's briefs. The board's finding was that the sheer number, and this was our argument below, the sheer number of modifications and the fact that the modifications proposed by the petitioner changed from the opening to the reply suggests that the combination is only obvious in hindsight. For the whole question of obviousness... So they never made a determination that these modifications would be beyond the ordinary skilled arts. They didn't. There was a determination that it was questionable, at least, as to whether the marker band could be recessed at the distal tip of that device while keeping the distal tip construction as it was and to smooth. The issue is the tube of the Contos device has a few different portions that protrude, and those portions within the guide catheter all limit the size of the inner lumen of the Contos device. Medtronic argued that cutting off the flare at the proximal end would allow you to increase the size of the device relative to the guide catheter. And our point in response was you would need to do something with the other portions of the device as well. And although we didn't have an opportunity to submit evidence on this because Medtronic raised it for the first time in reply and the board denied the opportunity to submit additional expert testimony, there is some evidence in the record, which the board referred to in its decision, to show that the ability of a person to recess the marker band at the distal tip, which you would need to do to increase the size of the lumen, was at least, perhaps, there was at least a question as to whether that was possible at the relevant time. So that's the one on which I think the board did make a finding that it may have been beyond the... Yeah, it doesn't, aside from that one modification, it doesn't even say what modifications would be required or that there was a problem with making them. Well, the modifications that would be required were laid out in our experts' declaration in the briefing below. But the point, again, is not reasonable expectation of success or the level of skill in the art. That wasn't the board's finding at all, and it wasn't our argument. Our argument was the sheer number of modifications, coupled with the way that they're being presented to the board, suggests that the combination is only obvious in hindsight, knowing what these are. What's the basis with respect to the side opening claims for rejecting these two modifications that the board described but didn't address? You said there was an implicit finding rejecting them. What was that implicit finding? I think the finding by the board was that the evidence was in equipoise on both sides of the case. So the board's opinions each has a section detailing all of the evidence, petitioner's arguments, patent owner's responses, petitioner's reply, patent owner's surreply to the extent that there was a surreply there. So all of the evidence that the board considered is laid out there. And the way the board wrote these opinions in the conclusion... Where is that conclusion that you're suggesting the board reached about the evidence being in equipoise? Let me point you to that. There's one in each opinion. I will point you to... Point me to the one about the issue that Judge Dyke is asking you about. Yes. Sure. One moment. Forgive me. I think it's page 46 of the board's opinion. That's right. So at the top of page 46, and this is the language in the 032 patent decision. There's nearly identical language in the other two decisions as well. The board says, upon review of the party's evidence and supporting evidence, we find the party's argument to present a close case on the question of obviousness. For example, while side openings were known, they were rare. Moreover, switching to a side opening to increase the available real estate would require several modifications to the device, at least one of which was not mentioned in the petition and may not have been possible in the relevant time period. Okay, but that finding that rarity is somehow relevant is itself an error, right? I disagree with that, Your Honor. We've said repeatedly that in addressing obviousness, you assume familiarity with all of the prior art. And they're saying that in terms of motivation, you don't have to make that assumption. You ask whether it's a rare feature. No, Your Honor. I think it's... But it stands to reason if a feature was ubiquitous in the prior art for a particular purpose, that would present an exceptionally strong case of motivation to combine. The Board's point here was simply that the converse is true as well. If a feature is uncommonly or rarely used for a particular purpose, that tends to at least weaken, if not eliminate entirely, the motivation to combine on that point. And again, in my reading of the Board's opinions, they reviewed all of the evidence and arguments and simply found that it was a close case, that whether Medtronic had made its case or not on a prima facie basis, the very strong evidence of secondary considerations, the vast majority of which was undisputed, below and on appeal, weighed in favor of a finding of patentability. And that's in the paragraph following the one you read earlier. Precisely. But that's only with respect to the side-opening claims, right? That's with respect to the side-opening claims. That's correct. As to the one French claims, the double-inclined claims, and the motion to amend claims, there were further findings that the motivation to combine simply had not been shown. But let me make a point, Your Honor. This Court does not need to reach the one French claims or the double-inclined claims. All of the double-inclined claims have the side-opening feature. So it's not as clear as it could be from the Board's opinion, but that is a sufficient basis to affirm all of the double-inclined claims. And as to the one French claims, while not all have the side-opening, all of them depend on the same combination and the same motivations to combine that the Board addressed here, which is, in fact, the sort of upsizing of the lumen of the device compared to the guide catheter. Okay. Thank you, Justice. Thank you. If I could make three brief points. With respect to, I think, the last argument about the Board summarizing the parties' arguments, this Court has held in cases like In Re Nuvasiv that it's not sufficient for the Board to simply summarize and reject arguments without explanation, which is precisely what the Board did here. The Board is required to make a finding with respect to motivation to combine when it is disputed. Is this a situation in which the Board said, we agree with the patentee's evidence? It's not, Your Honor. The Board didn't make a finding one way or the other. It just stated, this is a close case, and so we look to the evidence of secondary considerations. Well, do you think, would the Board, you don't like the exact language the Board used, but would you be telling me the Board erred if it said, even accepting as true Medtronic's motivation to combine, we still think it's a close case, and let's go on to the secondary considerations, and they outweigh it. So, do you think it would have been legitimate had the Board said that? I think there's still errors in the Board's analysis and the treatment of those, including legal errors that we explained in our papers, including with the... Let me just answer my question, which is, your argument right now to Judge Dyke is that there's a problem because the Board didn't make a fact-finding on this particular motivation to combine issue. Let's just focus on the side opening. They didn't make that decision, and you think that was error for them not to decide that fact question. And my question to you is, would it have not been error had they decided that fact question in your favor but then gone on to say, nonetheless, the objective evidence outweighs that weak prima facie case? In this case, it still would have been error because the Board's reliance on the modifications is not a sufficient basis to negate obviousness here, particularly where, as Mr. Lott explained, all of those modifications... You're just not listening. My hypothetical does not involve the million other issues and arguments you might raise. Assume you've made a prima facie case on all of that, but the Board has come along and concluded that prima facie case is weak, and they'll just give you credit for the motivation to combine. Is there an error in them going on and saying, nonetheless, secondary consideration outweighs that? The answer has to be yes, that would be sufficient as long as their analysis of the secondary considerations is correct, right? I think in this particular case, setting aside all of the errors that in the Board's analysis, which we don't think are sufficient to be able to overcome the motivation to combine here, that would be correct if the secondary considerations, which we also dispute, was correctly decided here. You actually don't dispute the secondary considerations, you just dispute the nexus, correct? The nexus and the finding of copying, which the Board relied on particularly to come to the conclusion of non-obviousness here. One last point to make here is that with respect to the modifications issue, that applies only to the fourth motivation that Medtronic identified. So there were four motivations, one of which was increasing the relative size of the inner catheter relative to the outer catheter. No modifications would be necessary to achieve the other motivations to combine, including the two that the Board did not address, and the second, inserting interventional cardiology devices, which the Board addressed by stating that it was rare to do so, which, as we argued in our papers, was an independent error of itself. Okay, I thank both counsel. This case is taken under submission.